IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 18-537 |
| | : | |
| MICHAEL HOGAN | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                     **October 26, 2021**

      Michael Hogan admitted managing a detailed financial fraud scheme by, among other things, stealing his investors' identities and submitting false or forged documents. The United States charged Mr. Hogan with mail fraud, wire fraud, conducting transactions in the proceeds of unlawful activity, aggravated identity theft, and passport forgery. Mr. Hogan pleaded guilty to these charges within three weeks of the United States filing its charges. He confirmed a complete understanding of the charges against him and his satisfaction with counsel. We proceeded to sentencing where Mr. Hogan hoped the United States may move for a downward departure based on information he provided. The United States declined to do so. Mr. Hogan's attorney argued Mr. Hogan's attempted cooperation warranted a lesser sentence, but the United States did not move for a downward departure based on this cooperation. Mr. Hogan and his attorney agreed to the representations made by the United States. We sentenced Mr. Hogan on July 8, 2019. He did not appeal. He instead petitioned for habeas relief which inexplicably did not arrive at our Clerk's office until August 2021. Putting aside the delay, we find no basis for Mr. Hogan's challenges to his counsel's performance or to the nature of the aggravated identity theft charge against him. We find no disputed fact warranting a hearing nor grounds for a certificate of appealability.

I.   **Background**

The United States Attorney charged Michael Hogan through a November 27, 2018 Information with two counts of mail fraud, four counts of wire fraud, two counts of conducting transactions in the proceeds of unlawful activity, five counts of aggravated identity theft, and one count of passport forgery.[1]

The United States Attorney alleged Mr. Hogan defrauded investors through a credit card scheme.[2] Mr. Hogan recruited investors with good credit with promises he would invest their funds through his companies to obtain returns.[3] The investors sent credit card and loan proceeds to Mr. Hogan for him to invest.[4] He promised monthly returns on their investments, but ultimately took their money for himself.[5] Mr. Hogan's scheme drove two investors into bankruptcy.[6]

Mr. Hogan also used stolen identities to secure business loans which he took for himself.[7] Mr. Hogan established bank accounts for his businesses, then applied for small business loans.[8] He submitted false or forged documents to obtain the loans.[9] He designated people whose identities he had stolen as the loans' guarantors.[10] The guarantors did not know of the loan applications, received no proceeds from the loans, and never provided Mr. Hogan their consent to guarantee the loans.[11] The United States Attorney charged Mr. Hogan with aggravated identity theft and wire fraud regarding this scheme.[12] Mr. Hogan earned $1,275,771.47 from his credit card and loan schemes.[13]

*Mr. Hogan signs a guilty plea agreement.*

Mr. Hogan signed a plea agreement on December 17, 2018, twenty days after the Information, pleading guilty to all counts.[14] He agreed to several sentencing conditions. He acknowledged we could impose a maximum sentence of 160 years.[15] He also agreed the parties could argue or stipulate to the applicability of the Sentencing Guidelines, but we could make our

own sentencing determinations.[16] He agreed the fraud loss exceeded $550,000 but fell below $1,500,000.[17]

Mr. Hogan also largely waived his right to collaterally attack his conviction or sentence through a habeas petition under section 2255.[18] He waived the right to argue "the admitted conduct does not fall within the scope of the statutes" under which he received charges.[19] He agreed he may collaterally attack his sentence only by arguing his sentence exceeded the statutory maximum, we imposed an improper upward departure or upward variance, or his counsel rendered ineffective assistance.[20]

Mr. Hogan acknowledged his satisfaction with legal representation provided by counsel, he and his counsel "fully discussed" the plea agreement, and he agreed to plead guilty because he admits his guilt.[21] The parties did not agree the United States would seek a downward departure at sentencing. The parties agreed they had made no agreements besides those contained in the plea agreement.[22]

### Mr. Hogan pleads guilty at hearing.

We held a plea hearing the same day Mr. Hogan signed the plea agreement.[23] Mr. Hogan's counsel informed us he "attempted to cooperate with the Government and met with the Government on a number of occasions."[24] The United States did not seek a downward departure for Mr. Hogan's purported cooperation under United States Sentencing Guideline 5K1.1.[25] Mr. Hogan testified he was satisfied with his counsel's representation.[26]

The United States read into the record the plea agreement, including Mr. Hogan's stipulation to the $1,275,771.47 fraud loss.[27] Mr. Hogan testified he discussed his plea agreement with counsel and understood it.[28] The United States represented Mr. Hogan's frauds caused a

$1,275,771.47 loss to the victims.[29] Mr. Hogan testified the United States presented accurate information.[30]

The United States also read into the record the elements of aggravated identity theft and how Mr. Hogan committed them.[31] Mr. Hogan testified "[e]verything" the United States presented is "factual."[32] We asked Mr. Hogan if he "recall[ed] any other agreement that you may have had with the United States that's not in the plea agreement or that was described by the United States here today."[33] Mr. Hogan responded, "No, there was no agreement."[34] He testified the United States "did ask me for information about other things and I did give that to them . . . [b]ut there was never an agreement."[35] He pleaded guilty to all counts in the Information.[36]

## *We sentenced Mr. Hogan.*

On July 8, 2019, we sentenced Mr. Hogan to ninety-one months' imprisonment, two years' supervised release, and restitution of $1,275,771.51.[37] Mr. Hogan's counsel argued Mr. Hogan's attempted cooperation with the United States showed he accepted responsibility for his crimes. Mr. Hogan chose to not appeal.

**II.   Analysis**

Mr. Hogan now petitions for habeas relief under section 2255.[38] Mr. Hogan asserts three grounds for relief: (1) ineffective assistance of counsel by failing to "address[] the significant amount of assistance and cooperation that [he] provided both prior to and during the investigation of co-conspirators . . . [and] in another jurisdiction";[39] (2) ineffective assistance of counsel by failing to "adequately resolve the amount of loss";[40] and (3) "the count of 1028A(a)(1), (c)(5) is improper by statute and he has been charged improperly in the indictment [sic]."[41]

The United States responds Mr. Hogan's claims are meritless because (1) his counsel informed us of his cooperation;[42] (2) Mr. Hogan stipulated to the amount of fraud loss;[43] and (3)

the United States properly charged aggravated identity theft.[44] We agree with the United States there is no merit in Mr. Hogan's habeas petition. There is no basis for an evidentiary hearing and no grounds for a certificate of appealability.

### A. Mr. Hogan's counsel provided effective assistance.

Mr. Hogan asserts his counsel performed ineffectively by failing to: (1) address the "significant amount of assistance and cooperation" he provided to the United States; and (2) "adequately resolve the amount of loss." The United States responds: (1) Mr. Hogan's counsel described his cooperation, but the United States chose to not move for a downward departure; and (2) Mr. Hogan stipulated to the amount of loss. We agree with the United States.

Mr. Hogan must show "counsel's representation fell below an objective standard of reasonableness," causing "prejudice."[45] We apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."[46] To show prejudice, a petitioner must show "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[47] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[48]

#### 1. Counsel addressed Mr. Hogan's attempted cooperation and did not prejudice Mr. Hogan.

Mr. Hogan argues his counsel should have "addressed" his cooperation with the United States. The United States responds Mr. Hogan's counsel did address his attempted cooperation.

Mr. Hogan does not show ineffective assistance of counsel. Mr. Hogan's counsel addressed the assistance he provided to the United States. His counsel said during the plea hearing: "Mr. Hogan initially was a cooperating—attempted to cooperate with the Government and met with the Government on a number of occasions."[49] And Mr. Hogan's counsel again discussed his attempted

5

cooperation at our sentencing hearing, arguing his cooperation showed he accepted responsibility. But Mr. Hogan signed a plea agreement which did not include a cooperation provision. Mr. Hogan repeatedly testified he understood his plea agreement. He testified he provided information to the United States, but also testified he and the United States agreed to no agreements besides those in the plea agreement. Mr. Hogan does not argue an unknowing and involuntary plea. Mr. Hogan fails to show ineffective performance.

Mr. Hogan has not shown prejudice even if we could find counsel's deficient performance. We may "depart from the guidelines" if the United States moves under section 5K1.1 and shows "the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense."[50] We then determine whether reduction is warranted.[51] But the United States has no "duty[] to file a motion when a defendant has substantially assisted."[52] If the parties do not sign a cooperation agreement, "the prosecutor has almost unreviewable discretion over whether to file a substantial assistance motion."[53] We may review the United States' refusal to file motions under section 5K1.1 only if it refused based on "an unconstitutional motive" or "if the prosecutor's refusal to move was not rationally related to any legitimate Government end."[54]

The United States did not move to reduce Mr. Hogan's sentence under section 5K1.1. Mr. Hogan testified he understood he did not sign a cooperation agreement with the United States. Mr. Hogan cites no unconstitutional motive for the United States' refusal to move for a downward departure. He does not argue the United States' refusal to move bears no relation to legitimate ends. Mr. Hogan's counsel had no reason to argue his cooperation warranted a downward departure because the United States did not move under section 5K1.1. Mr. Hogan acknowledged we could make our own sentencing determinations regardless of the parties' stipulations.

6

We deny Mr. Hogan's first ineffective assistance claim.

### 2. Counsel addressed the fraud loss to which Mr. Hogan stipulated.

Mr. Hogan next argues his counsel failed to properly address the amount of fraud loss. The United States argues Mr. Hogan stipulated to the amount of fraud loss.

The amount of fraud loss affects Mr. Hogan's sentencing range.[55] Mr. Hogan stipulated to fraud loss totaling $1,275,771.47 in his plea agreement. He confirmed the amount of fraud loss at his plea hearing. The United States read into the record the amount of fraud loss, and Mr. Hogan confirmed the accuracy of the United States' facts. He later said "[e]verything" the United States presented "was factual." "Solemn declarations in open court carry a strong presumption of verity," and we will not disturb them based on Mr. Hogan's "wholly incredible" "conclusory allegations."[56] Mr. Hogan does not explain how counsel performed ineffectively by failing to challenge a fact he swore is true. He does not argue his plea was not knowing and voluntary. We reject this claim.

### B. Mr. Hogan waived his meritless argument the United States improperly charged him.

Mr. Hogan argues his charge of aggravated identity theft "is improper by statute and he has been charged improperly." The United States responds it properly charged Mr. Hogan.

Mr. Hogan waived this claim in his plea agreement. He waived the right to argue his "admitted conduct does not fall within the scope of the statutes" under which he received charges. This is Mr. Hogan's argument today. He also agreed he may collaterally attack his sentence only if it exceeded the statutory maximum, included an improper upward departure or upward variance, or counsel performed ineffectively. Mr. Hogan's argument regarding aggravated identity theft does not concern sentencing or ineffective assistance. We ensured during our plea hearing Mr. Hogan signed the waiver knowingly and voluntarily. Mr. Hogan does not argue the waiver was not

knowing and voluntary, nor does he argue its enforcement causes a miscarriage of justice.[57] We will enforce his waiver.

Mr. Hogan's argument lacks merit even if he had not waived it. "Whoever, during and in relation to any felony violation enumerated in [subsection 1028A(c)], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person," commits aggravated identity theft.[58] The United States charged Mr. Hogan with using other peoples' identities to obtain business loans and described how he used those identities without lawful authority.[59] The United States charged Mr. Hogan with aggravated identity theft in relation to wire fraud.[60] Wire fraud is listed in subsection 1028A(c).[61]

The United States read the elements of aggravated identity theft during Mr. Hogan's plea hearing.[62] Mr. Hogan pleaded guilty to the charges and swore the United States presented accurate information. He signed a plea agreement pleading guilty to the charges under section 1028A. Mr. Hogan does not argue how his charge of aggravated identity theft is improper; he simply argues it is "improper by statute" and "he has been charged improperly." He presents no basis for us to question the propriety of his plea or charges.[63] We reject this claim.[64]

### C.   We find no need to hold an evidentiary hearing.

We must order an evidentiary hearing to decide habeas petitions "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[65] To determine whether we should hold a hearing, we undertake a "two-pronged inquiry."[66] First, we must consider all "nonfrivolous factual claims" as true.[67] Second, we must "determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel."[68] If the petitioner "states a colorable claim for relief . . . then further factual development in the form of a hearing is required."[69] But if the claim "conclusively" fails either prong of the ineffective assistance of counsel test, we should not order a hearing.[70]

We decline to order an evidentiary hearing. Mr. Hogan's petition conclusively shows he is not entitled to relief because Mr. Hogan presents no fact claims for us to consider. We need not resolve fact disputes or consider evidence to decide his claims. The existing record conclusively shows he is not entitled to relief. A hearing would not change our analysis because we need not resolve fact disputes. We decline to hold an evidentiary hearing.

### D. We decline to issue a certificate of appealability.

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."[71] We may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right."[72] A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[73]

We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our resolution of Mr. Hogan's constitutional claims. The issues Mr. Hogan raises are inadequate to proceed further because they are meritless.

## III. Conclusion

An individual who entered a knowing and voluntary guilty plea now claims his counsel provided ineffective assistance. But he offers no basis showing his counsel provided ineffective assistance or prejudiced him. He offers no basis to challenge the statute of conviction. We deny his habeas petition. We find no basis for an evidentiary hearing nor a certificate of appealability.

---

[1] ECF Doc. No. 1 at 1.

[2] *See id.* at 1–5.

[3] *Id.* at 2 ¶ 7.

[4] *Id.* at 3 ¶ 9.

[5] *Id.* at 2 ¶ 7, 3 ¶ 9.

[6] *Id.* at 4 ¶ 17.

[7] *Id.* at 6–11.

[8] *Id.* at 7 ¶ 12, 8 ¶ 13.

[9] *See, e.g., id.* 8 ¶ 13, 9–10 ¶ 22.

[10] *Id.* at 7 ¶ 11, 8 ¶ 13.

[11] *See id.* 8 ¶ 16, 9 ¶ 20, 10 ¶ 26.

[12] *Id.* at 11, 13.

[13] *Id.* at 15 ¶ 1.

[14] ECF Doc. No. 5.

[15] *Id.* at 3 ¶ 3.

[16] *Id.* at 6 ¶ 12.

[17] *Id.* at 7 ¶ 12(a).

[18] *Id.* at 8 ¶ 14.

[19] *Id.*

[20] *Id.* at 9 ¶ 14(b).

[21] *Id.* at 10 ¶ 17.

[22] *Id.* at 10 ¶ 18.

[23] ECF Doc. No. 10.

[24] *Id.* at 9:8–10.

[25] *See* ECF Doc. No. 15; Pre-Sentence Report (PSR).

---

[26] ECF Doc. No. 10 at 15:17–18.

[27] *Id.* at 21:2–4.

[28] *Id.* at 18:14–19:17.

[29] *Id.* at 60:19–22.

[30] *Id.* at 61:10–15.

[31] *Id.* at 35:12–21 (reading elements of aggravated identity theft); 58:12–15 (count nine); 52:2–7 (count ten); 51:2–6 (count eleven); 51:11–16 (count twelve); 45:24–46:4 (count thirteen).

[32] *Id.* at 64:16–18.

[33] *Id.* at 22:23–23:1.

[34] *Id.* at 23:2.

[35] *Id.* at 23:2–6.

[36] *Id.* at 63:14–64:7.

[37] ECF Doc. No. 21 at 3–4, 7.

[38] ECF Doc. No. 23.

[39] *Id.* at 5.

[40] *Id.* at 6.

[41] *Id.* at 8.

[42] ECF Doc. No. 25 at 14–15.

[43] *Id.* at 15–16.

[44] *Id.* at 17.

[45] *United States v. Kauffman*, 109 F.3d 186, 190–91 (3d Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984)).

[46] *Bell v. Cone*, 535 U.S. 685, 702 (2002) (internal quotations omitted).

[47] *Strickland*, 466 U.S. at 694.

---

[48] *Id*.

[49] ECF Doc. No. 10 at 9:8–10.

[50] U.S.S.G. § 5K1.1.

[51] U.S.S.G. § 5K1.1(a).

[52] *Wade v. United States*, 504 U.S. 181, 185 (1992).

[53] *United States v. Frank*, 455 F. App'x 147, 149 (3d Cir. 2011) (quoting *United States v. Isaac*, 141 F.3d 477, 481 (3d Cir. 1998)).

[54] *Wade*, 504 U.S. at 185–86.

[55] *See* PSR ¶ 6(a) (citing USSG § 2B1.1(b)(1)(H)).

[56] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[57] *See, e.g.*, *Sheppard v. United States*, No.13-1667, 2014 WL 868921, at *2 (W.D. Pa. Mar. 5, 2014) ("A defendant can ... waive his right to collaterally attack his sentence pursuant section 2255 pursuant to a plea agreement, and said waiver will be upheld as long as the Court determines that the waiver was knowing and voluntary and does not result in a miscarriage of justice."); *United States v. Malachi*, No. 08-411, 2016 WL 3221866, at *2 (W.D. Pa. June 8, 2016); *United States v. Watson*, No. 05-3010, 2005 WL 3274246, at *1 (E.D. Pa. Aug. 25, 2005).

[58] 18 U.S.C. § 1028A(a)(1).

[59] *See* ECF Doc. No. 1 at 8 ¶ 16, 9 ¶ 20, 10 ¶ 26.

[60] ECF Doc. No. 1 at 13 (charging aggravated identity theft under 18 U.S.C. § 1028A(c)(5)); ECF Doc. No. 10 at 35:19–21 (explaining wire fraud theory).

[61] 18 U.S.C. § 1028A(c)(5).

[62] *See* ECF Doc. No. 10 at 35:12–21.

[63] *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014) (the burden of proof on a section 2255 petition "belongs to the petitioner").

[64] We are denying Mr. Hogan's petition on its merits. But we are aware the United States also argues Mr. Hogan did not file his petition within the statute of limitations. Congress requires petitioners to file section 2255 petitions within one year following the latest of four events:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1–4). Mr. Hogan does not allege an "impediment" to petitioning, a "newly recognized" right, or new "facts supporting the claim," so we must consider whether he petitioned within one year after his judgment of conviction became final. Mr. Hogan did not appeal his conviction, so it became final "on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Mr. Hogan had fourteen days to appeal our judgment. Fed. R. App. P. 4(b)(1)(A)(i); *see also Coker v. United States*, No. 13-349, 2016 WL 310751, at *3 (D.N.J. Jan. 26, 2016). We entered judgment on July 8, 2019; fourteen days later is July 22, 2019. Mr. Hogan needed to petition under section 2255 by July 22, 2020. We must deem Mr. Hogan's petition filed on the date he delivered it to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 275 (1988).

We cannot determine the timeliness of Mr. Hogan's petition on this record. Mr. Hogan swore he handed his petition to prison officials for mailing on July 6, 2020. ECF Doc. No. 23 at 13. But our Clerk of Court did not receive his petition until August 5, 2021. ECF Doc. No. 23 at 14 (bearing a "RECEIVED" stamp of August 5, 2021).The United States argued Mr. Hogan submitted a late petition. Mr. Hogan did not reply and offered no explanation for the thirteen-month gap between July 6, 2020—when he swore he handed the petition to officials—and our August 5, 2021 receipt. But the United States also fails to attach proof of when Mr. Hogan mailed the petition, simply arguing he must have mailed it late because our Clerk did not receive it until August 5, 2021. We are also generally aware of the effects of COVID-19 mitigation on mailings over the past eighteen months.  We would need a hearing to resolve this fact dispute if timeliness is material to our holding. *See United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (we must order a hearing to resolve disputes of material fact under section 2255); *cf. Nolan v. United States*, 870 F. Supp. 2d 254, 260 (D. Mass. 2012) (where petition bore timely date but was not docketed until after time expired, and neither party submitted facts regarding the delay, it was "impossible to determine what caused the delay").

We need not order a hearing to resolve this issue because the fact dispute is immaterial. Mr. Hogan's claims are meritless regardless of when he raised them.

---

[65] 28 U.S.C. § 2255(b).

[66] *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021).

13

[67] *Id.* (quoting *United States v. Dawson*, 857 F.2d 923, 927 (3d Cir. 1988)).

[68] *Id.* (quoting *Dawson*, 857 F.2d at 927–28).

[69] *Id.* (quoting *Dawson*, 857 F.2d at 928).

[70] *Id.*

[71] 28 U.S.C. § 2253(c)(1)(B).

[72] 28 U.S.C. § 2255(c)(2).

[73] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).